**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3588-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NICHOLAS F. GARREFFI,

    Defendant-Appellant.

_____

Submitted February 26, 2025 – Decided April 25, 2025

Before Judges Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 15-08-1952.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Nicholas Garreffi appeals from the trial court's June 9, 2023 order denying his application for post-conviction relief (PCR). Based on our review of the record and the applicable legal principles, we affirm.

I.

In August 2015, a grand jury returned an indictment charging defendant with second-degree vehicular homicide, N.J.S.A. 2C:11-5(b) (count one); and three counts of fourth-degree assault by auto while under the influence of an intoxicating narcotic, N.J.S.A. 2C:12-l(c)(2) (counts two, three, and four).

On August 30, 2014, M.W.[1] was driving her sister and three friends to a soccer tournament in a car, and at approximately 8:30 a.m., was proceeding west on Route 40 in Mays Landing. Meanwhile, defendant was driving his pickup truck east on Route 40, when he veered out of his lane and crossed the median into the westbound lane. Defendant's vehicle clipped a box truck being operated by Darrell Jacobs and then struck M.W.'s vehicle. After M.W.'s car was struck, it spun 360 degrees in the front yard of a house approximately 100 yards down the road. Defendant's vehicle proceeded to crash into the nearby woods and caught fire.

---

[1] We use initials to identify the driver and the other victims to protect their privacy.

A-3588-22

Jacobs testified he observed defendant's truck cross the median and enter his lane. Jacobs advised one of the investigating officers that defendant was sitting up straight with his hands on the wheel and "appeared to be dazed . . . as the vehicle swerved towards him."

James Hollander was two cars ahead of M.W.'s car when he saw defendant's truck cross the median into the westbound lane. Hollander swerved to avoid being hit but observed defendant's vehicle strike Jacobs's box truck behind him, and then he saw debris "explode everywhere" as defendant hit M.W.'s vehicle.

A.C., who was seated behind M.W., suffered a severe head injury and died a few days later. The other occupants of the vehicle also sustained injuries. M.W. suffered a chest contusion and abrasions to her eye, arm, and face from the shattered glass. G.S. lost consciousness and sustained a concussion. She also had a chest wall injury and bruising and pain in her right hip and leg. K.B. injured her chest, abdomen, and neck and suffered headaches for several months. M.W.'s sister S.W. sustained a laceration to her head.

Jacobs testified that following the accident, defendant stated, "my tools are gone." Jacobs approached defendant and cursed at him because people had been injured in the accident. Expert testimony at trial revealed the data recorder

3

in defendant's vehicle demonstrated he had not applied his brakes or turned the steering wheel prior to the accident or following the impact. In addition, there were no skid marks on the road.

Defendant was transported to the hospital, where he consented to a blood draw. The blood analysis revealed the presence of alprazolam, a prescription medication commonly known as Xanax, at a concentration of thirty-five nanograms per milliliter. Defendant did not have a prescription for Xanax.

Ayako Chan-Hosokawa, a forensic toxicologist for the State, testified defendant's blood showed the Xanax concentration was consistent with having taken a three-milligram dose. She also testified that even at therapeutic doses, Xanax has side effects of drowsiness, poor coordination, and inability to multitask. The State's other expert, Dr. John Brick, testified Xanax can cause "mental confusion, chang[es] in reaction time, lengthening of reaction time, decrease in vigilance and staying focused on one particular task." Dr. Brick stated defendant's voluntary consumption of Xanax caused him to swerve into traffic in the opposite direction.

Defendant's psychiatrist testified the level of Xanax in defendant's blood was just above the therapeutic range and would have no side effects at that level. Defendant also presented the emergency room physician who examined

4

defendant at the hospital. He testified defendant did not appear intoxicated at the time. Defendant called several other lay witnesses, who also testified defendant did not appear to be impaired following the accident.

Following the trial, the jury convicted defendant of vehicular homicide while intoxicated and three counts of assault by auto while intoxicated. Defendant was sentenced to seven years' imprisonment with an eighty-five percent parole disqualifier pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2, on count one, and 365 days' imprisonment on each of the remaining counts, all of which were to run consecutively to count one and to each other.[2]

Defendant filed a direct appeal. In January 2020, we affirmed the conviction and sentence. State v. Garreffi, No. A-1535-17 (App. Div. 2020). The Supreme Court subsequently denied certification. State v. Garreffi, 241 N.J. 345 (2020).

Defendant filed a pro se PCR petition in July 2021. Thereafter, counsel was appointed and filed a brief in support of the petition. The trial court heard oral argument and denied the petition without an evidentiary hearing on June 9, 2023.

---

[2] The trial judge also found defendant guilty of three motor vehicle summonses and imposed a twenty-year license suspension.

A-3588-22

II.

Defendant raises the following points on appeal:

POINT I

[DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING OR A REMAND ON HIS CLAIMS THAT COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO PREJUDICIAL TESTIMONY, ELICITING PREJUDICIAL TESTIMONY, AND FAILING TO PRESENT ADEQUATELY HIS CLIENT'S DEFENSE.

POINT II

THIS MATTER MUST BE REMANDED FOR FINDINGS OF FACT AND CONCLUSIONS OF LAW ON [DEFENDANT]'S PRO SE CLAIMS.

We review a PCR court's conclusions of law de novo. State v. Nash, 212 N.J. 518, 540-41 (2013). We must affirm the PCR court's factual findings unless they are not supported by "sufficient credible evidence in the record." Id. at 540. A judge's decision to deny a PCR petition without an evidentiary hearing is reviewed under an abuse of discretion standard; however, we may review the factual inferences and legal conclusions drawn by the court de novo. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)); State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016).

6

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland test: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-prong test in New Jersey). A defendant must establish both prongs by a preponderance of the evidence. State v. Gaitan, 209 N.J. 339, 350 (2012).

As to the first prong, the Constitution requires "reasonably effective assistance," so an attorney's performance may not be attacked unless they did not act "within the range of competence demanded of attorneys in criminal cases," and instead "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). When assessing the first Strickland prong, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689. "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999) (citing State v. Davis, 116 N.J. 341, 357 (1989)). Thus, a reviewing court "must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance," and "the defendant must overcome the presumption that, under the circumstances, the challenged action [by counsel] 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Further, the court must not focus on the defendant's dissatisfaction with "counsel's exercise of judgment during the trial . . . . while ignoring the totality of counsel's performance in the context of the State's evidence of [the] defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006).

For the second prong of the Strickland test, "the defendant must show that the deficient performance prejudiced the defense" because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 687, 694. This means "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Marshall, 148 N.J. at 261 (quoting Strickland, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A petitioner is not automatically entitled to an evidentiary hearing merely by filing for PCR. State v. Porter, 216 N.J. 343, 355 (2013); State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rule 3:22-10(b) provides that a defendant is entitled to an evidentiary hearing on a PCR petition only if: (1) they establish "a prima facie case in support of [PCR]," (2) "there are material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) "an evidentiary hearing is necessary to resolve the claims for relief." Porter, 216 N.J. at 354 (alteration in original) (quoting R. 3:22-10(b)). In order to establish a prima facie case, a "defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b); see also Marshall, 148 N.J. at 158. Thus, to obtain an evidentiary hearing on a PCR petition based upon claims of ineffective assistance of counsel, a defendant must make a showing of both deficient performance and actual prejudice. State v. Preciose, 129 N.J. 451, 463-64 (1992).

Conversely, Rule 3:22-10(e) states

[a] court shall not grant an evidentiary hearing:

> (1) if an evidentiary hearing will not aid the court's analysis of the defendant's entitlement to [PCR];
>
> (2) if the defendant's allegations are too vague, conclusory or speculative; or
>
> (3) for the purpose of permitting a defendant to investigate whether additional claims for relief exist for which defendant has not demonstrated a reasonable likelihood of success as required by R[ule] 3:22-10(b).

Thus, "in order to establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied the effective assistance of counsel." Cummings, 321 N.J. Super. at 170. "[R]ather, the defendant 'must allege facts sufficient to demonstrate counsel's alleged substandard performance.'" State v. Jones, 219 N.J. 298, 312 (2014) (quoting Porter, 216 N.J. at 355).

Defendant argues his trial counsel failed to object to the State's eliciting prejudicial testimony as to the nature of the victims' injuries, which garnered sympathy for the victims, despite the parties' stipulating to the nature of the injuries as diagnosed by their physicians. He contends the cumulative effect of this testimony "divert[ed] the jury's attention from material matters of the case" and allowed the jury to base its decision on emotions rather than relevant evidence.

We are unconvinced trial counsel was ineffective for failing to object to the victims' testimony regarding their injuries. Notably, the victims testified about their injuries prior to the parties stipulating to certain injuries "as diagnosed by medical professionals." That is, trial counsel could not have objected to their testimony at that juncture as the State was permitted to present evidence regarding the victims' bodily injuries. See N.J.S.A. 2C:11-1(a). Additionally, the jury was not bound by stipulated facts on any essential element of an offense. State v. Wesner, 372 N.J. Super. 489, 493-94 (App. Div. 2004).[3] Accordingly, their testimony was necessary for the State to establish the victims sustained bodily injuries. N.J.S.A. 2C:12-1(c)(2).[4] Presumably, by stipulating to these facts, the State did not have to call any physicians to testify, which would have only amplified the injuries the victims sustained.

---

[3] The stipulation read by the trial judge provided:

> [T]he crash resulted in the following injuries, as diagnosed by medical professionals. [M.W.], abrasions to her eye, arm, and face, seatbelt contusion on [chest]. [G.S.], concussion, nosebleed, chest wall injury, bruising and pain on [the] right hip and leg. [K.B.], pain to [the] chest, abdomen, upper thigh and head.

[4] Under N.J.S.A. 2C:12-1(c)(2), in order to prove a fourth-degree offense, the State must prove the victim sustained "bodily injury."

We further observe that even if this failure to object somehow satisfied prong one of Strickland, the injuries suffered by the surviving victims were relatively minor in comparison to the devastating, fatal injuries sustained by A.C., who suffered serious head trauma leading to her death. Accordingly, we fail to see how the other victims' testimony regarding their comparatively minor injuries would have garnered unfairly prejudicial sympathy impacting the outcome of this matter. Therefore, we conclude defendant failed to satisfy prong two of Strickland.

Defendant next asserts trial counsel was ineffective by eliciting damaging testimony from Jacobs regarding a statement he made after defendant exited his truck following the accident. Jacobs told police defendant was "talking about his tools," and Jacobs said defendant was an "a[**]hole" because he felt defendant had no regard for the people who were hurt in the accident. Defendant argues this testimony "served no purpose other than to tell the jury" defendant was a "bad person who [was] capable of uncaring behavior."

The PCR court rejected this argument, noting trial counsel's line of questioning was designed to discredit Jacobs's testimony by demonstrating his statements were rooted in anger and not fact, because Jacobs had not advised the responding officers that defendant appeared "dazed" prior to the crash.

12

Therefore, it found defendant failed to satisfy prong one of <u>Strickland</u>. The PCR court determined defendant's conviction was not "wholly or even predominantly" based on an implication that defendant "appeared callous or insensitive towards the victims." Rather, it was based on a "wealth of evidence" presented to the jury "including testimony from the victims, witnesses, . . . responding officers, as well as multiple expert witnesses." Accordingly, it found defendant also did not satisfy the second prong of <u>Strickland</u>.

We conclude the court did not err in addressing this issue. Trial counsel's questioning of Jacobs—when considered against the backdrop of the arguments made in summation—was clearly designed to attack his credibility regarding his testimony that he observed defendant appearing "dazed" immediately before the tragic accident, which was important to the State's arguments at trial that he was under the influence of Xanax. Jacobs did not initially report to police that he observed defendant in this "dazed" state. Accordingly, trial counsel's attempt to challenge the trustworthiness of Jacobs's statement and infer he was biased because he was angry at defendant did not fall below the objective standard of reasonableness required of criminal defense attorneys.

Counsel also tried to downplay defendant's purported callousness by explaining defendant's vehicle was some distance from the victims' car, and he

did not know at the time anyone was injured. We cannot second-guess trial counsel's strategy under these circumstances, which was arguably very reasonable, when his questioning was designed to attack Jacobs's credibility and demonstrate bias. "Merely because a trial strategy fails does not mean that counsel was ineffective." Bey, 161 N.J. at 251 (citing Davis, 116 N.J. at 357). Accordingly, we conclude defendant failed to satisfy the first prong of Strickland. Likewise, even assuming defendant satisfied the first prong of Strickland, he would still fall short of satisfying prong two. There was an abundance of damaging evidence presented at trial against defendant, and there is no suggestion Jacobs's comment about defendant somehow became the focus of the State's arguments or impacted the outcome of the trial.

We next turn to defendant's argument that trial counsel failed to advise him to testify on his own behalf because it "would have enabled him to present his complete defense to the jury." He asserts he would have been able to advise the jury that he was distracted, not intoxicated, rather than "allowing for a conviction based on emotion rather than fact."

Defendant failed to produce a certification that he would have testified or what he would have testified to had counsel advised him to take the stand. R. 1:6-6 (a motion not based on facts in the record must be supported by an affidavit

made on personal knowledge). Moreover, during the colloquy with the court, defendant was advised he had the right to testify or to remain silent. Defendant acknowledged he was not threatened or coerced in making his decision to remain silent and had sufficient time to speak with his attorney about that decision. He never asserted a desire to testify, nor that he was advised not to testify. Moreover, defendant has not asserted how his testimony would have altered the outcome of the trial. Rather, defendant would have likely been subject to cross examination regarding his illegal use of Xanax and his statements to Jacobs after the accident. Accordingly, we conclude the PCR court did not err in finding defendant failed to establish prongs one and two under Strickland.

Lastly, defendant contends the PCR court failed to address the claims raised in his pro se petition, other than those separately raised by counsel. The State counters defendant failed to make any arguments in support of the underlying pro se PCR petition, nor were any arguments advanced on appeal in support of these issues. Moreover, it argues defendant listed several claims "without elaboration and unaccompanied by a supporting certification." It further asserts PCR counsel did not elaborate on the issues raised by defendant before the PCR court even though counsel incorporated the issues by reference.

15

Defendant failed to "set forth with specificity the facts upon which [his] claim for relief [was] based" and "the legal grounds of [the] complaint asserted" before the PCR court regarding his pro se petition pursuant to Rule 3:22-8.[5] Moreover, he failed to brief the issues on appeal. Accordingly, we will not consider these claims. An issue may be deemed waived if not properly briefed. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2017); see also Telebright Corp. v. Dir., Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (treating such a failure to brief an argument as a waiver); Gormley v. Wood-El, 422 N.J. Super. 426, 437 n.3 (App. Div. 2011).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

---

[5] We further observe certain of these issues were addressed on direct appeal. Moreover, other issues, such as defendant's argument that trial counsel failed to "object to expert testimony due to inconsistencies," is bereft of any citation to the record or discussion of the purported inconsistencies. Defendant further asserts trial counsel failed to "hire adequate experts to counter [the State's] experts." Again, there is no certification asserting what experts should have been hired and what the experts would have opined to alter the outcome of the trial.